UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION


UNITED STATES OF AMERICA,         )
        )
        )
      Plaintiff,        )
        ) Case No.
      vs.        ) 14-CR-3106-MDH-25
        )
        )
DAVID A. FLOYD,        )
        )
      Defendant.        )


SENTENCING
BEFORE THE HONORABLE M. DOUGLAS HARPOOL
MONDAY, MAY 22, 2017; 1:15 P.M.
SPRINGFIELD, MISSOURI




APPEARANCES:

FOR THE PLAINTIFF:      MR. RANDALL D. EGGERT
      UNITED STATES ATTORNEY'S OFFICE
      901 St. Louis, Ste. 500
      Springfield, MO 65806


FOR THE DEFENDANT:      MR. RYAN D. REYNOLDS
      ATTORNEY AT LAW
      1323 E. Montclair
      Springfield, MO 65804


COURT REPORTER:      MS. JEANNINE RANKIN, RPR, CSR
      UNITED STATES DISTRICT COURT
      222 N. Hammons Parkway
      Springfield, MO 65806


    Proceedings recorded by mechanical stenography;
transcript produced by computer.

USA v DAVID A. FLOYD

CASE NO. 14–CR–3106–MDH–25

3         SENTENCING

4         May 22, 2017

5         *   *   *   *   *   *

6         THE COURT:  We're here for the sentencing of David

7    A. Floyd.

8              Who appears on behalf of the United States?

9              MR. EGGERT:  Randy Eggert for the United States,

10   Your Honor.

11             THE COURT:  And on behalf the defendant?

12             MR. REYNOLDS:  Ryan Reynolds for David Floyd who

13   appears in person.

14             THE COURT:  Mr. Floyd, would you stand.

15             My name is Doug Harpool.  I'm a federal district

16   judge.  It is my responsibility this afternoon to sentence you

17   for the crime of conspiracy to distribute 500 grams or more of

18   a mixture or substance containing a detectible amount of

19   methamphetamine.  That is a Class A felony.  That is the

20   highest class.

21             What we're going to do is the law instructs me to

22   sentence you to a sentence which is sufficient but not greater

23   than necessary to meet the objectives of the sentencing laws.

24   So first thing we'll do is we'll see if we can agree on what

25   those laws are.  That requires me to first of all talk about

2

what the Congress has passed, what they say the punishment for someone who's committed your crime can be.  We'll then look at the U.S. Sentencing Guidelines.  They will give us a guideline sentence of what the guideline says a sentence would typically be.  Then we'll listen to factors that the lawyers will argue and recommend that are described in Title 18, Section 3553(a) which allow this Court to depart or vary from the guideline.  Your sentence can be above or below the guideline as long as it's an authorized sentence.  When that's done, I'll give you a chance to say something to me by way of allocution.  When that's finished, I'll make a final decision.

I want to assure you of something before we get started.  I've read everything in the file.  The lawyers have both submitted lengthy suggestions regarding sentencing.  I've read every word of it.  I read carefully your presentence investigation report.  Have you read that, your presentence investigation report?

THE DEFENDANT:  Some of it.

THE COURT:  Well, do you want --

THE DEFENDANT:  Oh, yes, I've read all of my presentence investigation report.  I'm sorry, Your Honor.

THE COURT:  That's all right.

So I'm familiar with that.  I've read the plea agreement.  So I'm familiar with the issues but I haven't made that final decision.  That's something I always hold till

3

1   after we go through the steps that I've outlined for you.  I

 2   won't make that final decision until after I hear what you

 3   have to say by way of allocution.  But I do want to assure you

 4   I've read everything that has been submitted to me and I will

 5   consider everything that's been submitted to me.

 6            I told you earlier, I talked about 3553 factors and

 7   Title 18.  I should mention that the lawyers will emphasize

 8   those factors in the law that are most important and they've

 9   already done so in their briefing.  So we may not mention

10   every factor by name in what we say here in hearing but it's

11   been considered either by brief or it will be considered by me

12   as I make that final decision.

13            Do you understand what we're going to do?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  Go ahead and be seated, then, we'll get

16   started.

17            Counsel, the authorized sentence, I should say, for

18   the crime that the defendant is guilty -- has pled guilty to

19   in Count 1 of the indictment is not less than ten years, as

20   much as life in prison, in addition, supervised release of not

21   less than five and as much as life, payment of $100 special

22   assessment and potential fine as high as $10 million.

23            Any disagreement that that is the authorized

24   sentence?

25            MR. EGGERT:  No, Your Honor, not from the

                                    4

1    government.

 2             MR. REYNOLDS:  Not from the defense.

 3             THE COURT:  All right.  Let's now talk about

 4    sentencing guidelines.

 5             I should have said it a minute ago.  I paused a

 6    minute ago and the reason I did is that technically the

 7    defendant pled guilty to Count 1 of the second superseding

 8    indictment but that is -- the punishment I just read is

 9    accurate for that.

10             Let's talk about the guidelines.  The presentence

11    investigation report concludes that the offense category --

12    the offense level of this defendant is 35 and the criminal

13    history category is two.

14             Let's talk first about criminal history category.  I

15    know the defendant had some objections I think to the criminal

16    history entries into the presentence investigation report and

17    one of them was Paragraph 71.  It's my understanding the

18    defendant is going to withdraw that objection.

19             MR. REYNOLDS:  That's correct, Your Honor.

20             THE COURT:  That had to do with whether or not the

21    ten-year restriction had been met; is that right?

22             MR. REYNOLDS:  That's correct, Judge.

23             THE COURT:  So that will be shown as withdrawn by

24    the defendant.  However, Paragraph 80, I understand that the

25    description of the offense as contained in the presentence

                                  5

1  investigation report is found not to be up-to-date and

2  accurate; is that correct, Mr. Reynolds?

3           MR. REYNOLDS:  That is correct, Judge.

4           THE COURT:  What do you believe the actual offense

5  is, offense of conviction?

6           MR. REYNOLDS:  Judge, the actual offense of

7  conviction is for receiving stolen, a misdemeanor which would

8  count for one point; however, the presentence report had only

9  appointed one point before.  So even though the points don't

10 change and the criminal history doesn't change, the offense of

11 conviction is a lower classification of offense.

12          THE COURT:  The only crime for which he was

13 convicted relevant to Paragraph 80 of the presentence

14 investigation report is the receiving stolen property and not

15 tampering with a motor vehicle?

16          MR. REYNOLDS:  That's correct, Your Honor.

17          THE COURT:  Does our probation office agree with

18 that?

19          MS. POTTER:  I agree, Your Honor, but I think it's

20 still two counts.

21          THE COURT:  Two counts of receiving stolen property?

22          MS. POTTER:  That's my understanding when I look at

23 the judgment.

24          THE COURT:  We all agree it would still count as one

25 for purposes of counting criminal history?

```
 1              MR. REYNOLDS:  Yes, Judge.

 2              MS. POTTER:  Correct.

 3              THE COURT:  And in the end this defendant would

 4    still be a criminal history category two?

 5              MR. REYNOLDS:  That is correct.

 6              THE COURT:  All right.  Let's now talk about the

 7    offense level which the presentence investigation concludes at

 8    five.  I know the defendant in their briefing had objections

 9    and I think the first objection was to the base offense level.

10              Do you wish to be heard on that other than what's in

11    your briefing, Mr. Reynolds?

12              MR. REYNOLDS:  No, Judge.  Just for the record, we

13    know that the law is against us on this one; however, we want

14    to preserve that in case of any future appeal or in case the

15    law changed to make sure it wasn't included as an admission.

16              THE COURT:  For the record, the objection is to

17    Paragraph 47, the base offense level.  Do you have an

18    assertion as to what you think the base level should be that

19    you want on the record?

20              MR. REYNOLDS:  Judge, I believe it should be 35 --

21    or 32.  Thirty-two.

22              THE COURT:  All right.  But it is a 38.

23              Mr. Eggert, do you wish to be heard on this issue?

24              MR. EGGERT:  Your Honor, I think I established in

25    the sentencing memorandum our argument.  I would point out
```

                                    7

1    that the sentencing memorandum also contains factual

2    assertions that Mr. Reynolds has indicated to me that he would

3    agree that if I called an officer, he would testify consistent

4    with those factual assertions.  Those factual assertions

5    coupled also with the defendant's own statements in the plea

6    agreement indicate the defendant received approximately half a

7    kilogram of methamphetamine prior to his arrest in 2014.  He

8    also owed Ms. Harmon an additional $5,000 for more

9    methamphetamine.  That coupled with the frequency of times

10   that he obtained methamphetamine from the conspiracy over the

11   long period of time indicates that it was reasonably

12   foreseeable to the defendant this was a large-scale conspiracy

13   that could have distributed in excess of 45 kilograms.  That's

14   the standard that has to be met under both the law and the

15   sentencing guidelines.

16           Thank you.

17           MR. REYNOLDS:  That's correct, Judge.  We would

18   agree that he would testify consistent and stipulate to the

19   contents of testimony as summarized in the brief; however, we

20   still wanted to preserve the issue of whether it was

21   reasonably foreseeable or not.  The law clearly is on the

22   government's side and at this time it doesn't look like that's

23   going to change.

24           THE COURT:  The Court will find that the parties

25   have stipulated that had the officer cited in the government's

1    sentencing memorandum testified, he would have supported the

2    quantity described in that and that there's no reason to call

3    him as a witness.  The Court also notes that defendant

4    maintains their objection to Paragraph 47.  Notwithstanding

5    that objection, the Court will overrule it.  I do think that

6    under the current status of the law the 38 is the proper base

7    offense.

8            Any other objections I need to address?

9            MR. REYNOLDS:  No, Judge.  The remaining objections

10   that we filed don't affect the guidelines in any way.  We were

11   just pointing out the factual inaccuracies as Mr. Floyd sees

12   them for the purposes of helping to understand his character.

13           THE COURT:  Those objections will be noted and no

14   admissions will be made regarding those other issues that are

15   touched upon to the admissions.  The Court will adopt a 35

16   offense level, a criminal history of two, which would make the

17   sentencing range under the guideline 188 months to 235 months.

18           Mr. Floyd, I'm sure this has been explained to you,

19   but in the back of the sentencing commission booklet adopted

20   by the U.S. Sentencing Commission there is a chart.  Along one

21   edge is the offense level starting low numbers to high numbers

22   and above the top there is criminal history category from low

23   category to high category.  And what you do is you meet -- for

24   your case, you go down to number 35 and you go over to the

25   second column, which is the criminal history of two, and

9

1  that's where I got the number 188 to 235 months.  I want to

2  make sure that's clear on the record and you understand that.

3          All right.  So the Court will adopt that as my

4  guideline sentence.  That also calls, by the way, for

5  supervised release of five years, a fine of between 20,000 and

6  10 million, and a $100 special assessment.

7          Now that we've talked about what the authorized

8  sentence is and now that we've talked about what the guideline

9  sentence is, I'm going to see what the lawyers want to say or

10  supplement from their briefing on the issue of the 3553(a)

11  factors.  Again, they've covered it in their briefing but if

12  they want to supplement it, I give them that chance.

13          Mr. Eggert.

14          MR. EGGERT:  Your Honor, pursuant to the sentencing

15  memorandum we are asking for a sentence of 174 months.

16  Typically in a case where the defendant is not a cooperator, I

17  ask for a sentence in the advisory guideline range but for

18  issues of proportionality, I feel compelled in this case to

19  ask for a sentence somewhat less than 188 months to be fair to

20  the defendant and also to make certain that his actions

21  reflect proportionately with other defendants that have been

22  sentenced in this case.

23          I want to focus on three factors very quickly.

24  They're all articulated also in the sentencing memorandum.

25  First, the nature and circumstances of the offense.  This is a

1  very large-scale methamphetamine conspiracy and this was not a

2  bit player in that conspiracy.  Mr. Floyd possessed 322 grams

3  of methamphetamine that was seized from him by the police.  He

4  also owed Kenna Harmon an additional $5,000 for

5  methamphetamine that he had previously purchased from her.  He

6  was a regular customer of Ms. Harmon's.  So he did not just

7  sell methamphetamine one time and get caught or he only had

8  one seizure and was apprehended; he was a regular customer of

9  the Harmons and it's his actions that make a conspiracy like

10  this possible and work.

11       And as I've said numerous times in other sentencing

12  hearings, this was one of the largest methamphetamine

13  conspiracies I've had the opportunity to work on as a

14  prosecutor in the Southern Division of the Western District of

15  Missouri.  This defendant was right smack in the middle of it

16  with his distribution activities.

17       Secondly, the defendant's history and

18  characteristics.  He is not a criminal history category one.

19  He has prior felony convictions:  burglary, possession of

20  misdemeanor amounts of marijuana, and tampering with a motor

21  vehicle.  While his convictions I would agree are not as

22  severe as some of the other people that the Court has

23  sentenced, they are felony -- there are at least two felony

24  convictions and they reflect the defendant has a history of

25  criminality that deserves an adequate form of punishment for

```
 1   this case that respects and reflects his criminal history and
 2   his criminal nature.
 3          Then lastly I do want to talk about the sentencing
 4   disparities and proportionality.  We've now had several
 5   defendants sentenced in this case.  I mentioned several in my
 6   sentencing memorandum.  Gregory Jones received a sentence of
 7   180 months.  He had a criminal history category of five which
 8   is greater than this defendant but the base offense levels are
 9   exactly the same and they are both mid-level dealers of
10   methamphetamine in the conspiracy.  Jeffrey Gardner is also a
11   mid-level dealer and the same kind of relationship with
12   Ms. Harmon that Mr. Floyd had.  He had a base offense level of
13   35 and a criminal history category of six.
14          So both Mr. Jones and Mr. Gardner had greater
15   criminal histories but every other respect they're the same as
16   Mr. Floyd:  they're mid-level distributors of methamphetamine.
17   That's why I'm asking for a sentence less than what the Court
18   gave both of those defendants.  They both received sentences
19   of 180 months.  I think Mr. Gardner (sic) should receive a
20   lesser sentence and so I'm asking for a sentence of 174
21   months.
22          In relation to Mr. Allen, he received a total
23   sentence of 180 months.  He had a criminal history category of
24   one but he also possessed a firearm.  That's what caused his
25   sentence to be where it was.
```

| | |
|---|---|
| 1 | Adversely, on the other side you have Jeffrey Hatch |
| 2 | who is sentenced to a sentence of 144 months.  Again, |
| 3 | Mr. Hatch was a similar defendant to this defendant in that |
| 4 | they were mid-level distributors of methamphetamine. |
| 5 | Mr. Hatch's criminal history was a three which is just |
| 6 | slightly higher than Mr. Floyd's which was a level two; |
| 7 | however, Mr. Hatch provided good and useful information to the |
| 8 | government that was helpful in furthering the investigation. |
| 9 | Mr. Floyd -- for reasons we've already talked about in |
| 10 | chambers -- I don't think deserves that kind of recognition |
| 11 | that Mr. Hatch got. |
| 12 | In addition, Ms. Paluczak received a sentence of 132 |
| 13 | months.  She had a criminal history category of four which was |
| 14 | slightly higher than this defendant but she also had the same |
| 15 | base offense level.  Again, she's the same kind of dealer, |
| 16 | mid-level dealer that Mr. Floyd was but she received a |
| 17 | sentence of 132 months again for basically the same reasons |
| 18 | that Mr. Hatch did. |
| 19 | In the end, proportionality is kind of a -- you feel |
| 20 | it out.  And the Court has ultimate discretion in this case |
| 21 | but the government's argument is that the defendant in this |
| 22 | case should receive a sentence less than 180 months, which was |
| 23 | the sentence that Mr. Jones and Mr. Gardner received, but he |
| 24 | should receive a sentence greater than 144 months, which is |
| 25 | the sentence that Mr. Hatch received.  So I ask for a sentence |

13

1    of 174 months but I can certainly see the Court's point of
2    sentencing the defendant to a sentence of maybe 168 months,
3    which is 14 years.  Somewhere in there would be a fair
4    sentence the government thinks would be proportionate with the
5    other defendants that have previously been sentenced.
6                I would say as an aside, the current Justice
7    Department has issued a -- recently issued a memo that
8    indicates that government attorneys should ask for a sentence
9    within the advisory guideline range unless circumstances
10   require otherwise.  The reason why I'm asking for a sentence
11   outside the advisory guideline range in this case is for
12   proportionality concerns that I have raised with the Court.
13   So I am asking for a sentence of 174 months, Your Honor.
14               Thank you.
15               THE COURT:  Mr. Reynolds, I've read in detail your
16   sentencing memorandum but you may supplement at this time if
17   you wish.
18               MR. REYNOLDS:  Thank you, Judge.
19               I'd just like to respond first, we appreciate the
20   government's position, first of all, in that they do believe
21   that a departure is also appropriate here.  I know that he's
22   asking for a 174-month sentence but also stated somewhere in
23   144 to 174 because of proportionality was also a fair range.
24   Being bound by that new memo to ask for the guideline
25   sentence, 174 is still an appreciated departure in his

14

1  recommendation.

2          However, in noting the culpability of some other

3  co-defendants, while we're not as privy to what they may have

4  done or said throughout the course of this case, there are

5  several defendants that I referenced in this memo who received

6  either minimum or below the minimum for one reason or another

7  even though they were upper-level participants or maybe they

8  possessed firearms.

9          Anthony Massoni handled the money.  He was sentenced

10 to 36 months on three counts to be served concurrently.

11 Mr. Floyd is here today on one count.  Mr. Floyd never

12 possessed a firearm as part of this case.

13         Joseph Allen, he got the minimum 120-month sentence.

14 He was also a mid-level participant like Mr. Floyd.  He had a

15 count for a firearm.  Again, Mr. Floyd didn't have a firearm.

16 He should be considered less culpable, less dangerous even

17 though there's no way he would get less than a 120-month

18 sentence.  That's why we feel that 120 months is appropriate.

19         Carlos Tapia, he got under the minimum for 108

20 months on Count 1 even though he was an upper-level

21 participant, delivered more than 100 pounds of methamphetamine

22 as part of this conspiracy.  If Mr. Floyd got the minimum, he

23 would still serve 12 more months than Carlos Tapia who did

24 these trips carrying hundreds of pounds, at least on one time

25 or various times up to 100 pounds being held responsible for.

15

Justin Owens, 30 months on Count 1. He was a low-level participant but he obtained 2-ounce quantities at a time whereas Mr. Floyd obtained half that much at a time according to the evidence.

Then Branden Malen, 24 months on Count 1 and 58 served concurrently. Count 58 was a firearm offense. He was also possession of a firearm by a drug user. So all these sentences for some of the co-defendants are lower than the minimum that Mr. Floyd is subject to and can't escape.

For these reasons -- oh, and also to respond to the government when he was talking about the factors that mattered to him, the nature and circumstances, the next thing he went though was the criminal history. He stated there was two felonies. As we discussed in the objections, that tampering first was limited to receiving stolen. So even if he was originally arrested with that tampering first, he doesn't have that second felony on his record. Like I said, that doesn't change the guidelines because for some reason it was given the right amount of points even though it was the wrong offense but we dealt with that. I just wanted to make sure to clarify that.

Judge, we here also believe proportionality is the most important part here. While not being a cooperator like maybe some of these other defendants who have managed to escape the minimum or get extremely lenient sentences,

1   Mr. Floyd was truthful and honest with investigators from the
     2   date of his arrest.  He spoke to the agent, Brian Welch, any
     3   time as directed and we believe that his honesty and
     4   truthfulness assisted in his own conviction and potentially
     5   others and we would ask the Court to consider all those things
     6   when you fashion your sentence.
     7              Thank you, Judge.
     8              MR. EGGERT:  May I briefly, because he raised some
     9   other individuals that I had not mentioned?
    10              THE COURT:  You may.
    11              MR. EGGERT:  The people that were mentioned by
    12   Mr. Reynolds all cooperated and they were all found --
    13   individuals such as Mr. Massoni, Mr. Malen, they did not
    14   distribute methamphetamine.  Mr. Allen also did not distribute
    15   methamphetamine.  He provided security to Ms. Harmon.  So
    16   there's differences between those individuals and Mr. Floyd.
    17              Then I'll also point out as strongly as I can, while
    18   I appreciate that Mr. Floyd was honest with the police at the
    19   time that he was arrested, Mr. Floyd did not stop dealing
    20   methamphetamine.  He continued to deal in methamphetamine
    21   after he spoke with the police and provided them with
    22   information.  That continuation of his activity indicated a
    23   serious problem and a serious addiction to not only
    24   methamphetamine but the sale of it that only prison has broken
    25   him of.  So I do think proportionality concerns -- which I

                                      17

1  think are what's driving this case more than anything, just
2  like Mr. Reynolds said -- require a sentence greater than not
3  only what Mr. Massoni and what the others got but also greater
4  than just a sentence of 120 months.  I still think a sentence
5  of between 180 and 144 is appropriate and I'm asking for 174.
6           Thank you.
7           MR. REYNOLDS:  May I briefly, Judge?
8           Couple points that I forgot to bring up from the
9  government's memorandum.  Gregory Jones -- or was it Jeffrey
10 Gardner's guidelines?  Both Jones' and Gardner's guidelines,
11 the bottom of the range was 292 to 365.  The sentence that
12 they received of 174 months -- or 180 months is a departure of
13 112 months.
14          THE COURT:  Variances.  They were not departures.
15          MR. REYNOLDS:  Variances, I'm sorry, Judge.  Which
16 is quite a bit.
17          And then Mr. Hatch, his guidelines were 240 to 260
18 months.  His sentence of 144 months is over a hundred months'
19 difference.  Here from the guidelines we're asking for a
20 departure of 60 months -- I mean a variance.  As far as they
21 go, there are other co-defendants who have gotten
22 significantly greater variances.
23          And other than that, Judge, you've read it all and
24 heard it all several times now.  Thank you for your time.
25          THE COURT:  Does your client wish to speak to the

Case 6:14-cr-03106-MDH   Document 1057   Filed 10/04/17   Page 18 of 28

1 Court?

 2         MR. REYNOLDS:  Yes, he does, Judge.

 3         THE COURT:  He may do so at this time.

 4         THE DEFENDANT:  I was just kind of caught by

 5 surprise today and I'm pretty nervous so I'm going to go ahead

 6 and read on paper.

 7         THE COURT:  You may.

 8         THE DEFENDANT:  I'd like to start by saying that

 9 I've never spent any time in jail before this except for a

10 couple weekends when I was younger.  The last 21 months of

11 being incarcerated has opened my eyes to how overwhelming the

12 issues and collateral damages for society as a whole that the

13 using, selling and adverse actions of people like myself are

14 created due to the use of drugs and the lifestyle surrounding

15 selling them.  I have dealt with the pains of addiction issues

16 off and on in my personal life but I really didn't comprehend

17 the magnitude of the overall situation and I'm ashamed to have

18 had any involvement in it.  Besides affecting my immediate

19 family and friends, I'm sure I had an impact on people's lives

20 that I didn't even know and to those unnamed people, I am

21 sorry.

22         My attorney and I anticipated this hearing being

23 scheduled toward the end of June when my kids would be out of

24 school, but due to having found out on May 11th this hearing

25 was to take place today, I wasn't able to get my friends and

1  family members enough notice or time to be able to make

2  arrangements to be off work or to make the long trips to be

3  here and the kids get out of school.  Even though I can't say

4  it to them personally, it's still important to me to take the

5  time to express and apologize to them most of all.  They're

6  the ones who stood by me and were affected most by my actions.

7  None of them ever deserved the heartache or inconvenience this

8  has caused in their lives, especially my children who are

9  completely innocent bystanders.  To all of them I'm very sorry

10 and would like to thank them for all of their past and present

11 support.  I intend to make every effort to be a more reliable

12 friend, family member and father over the next ten years.

13 Even though I cannot change the past, I hope to try to make it

14 a better future if they will allow me the opportunity.

15         My intentions are to go through the BOP drug

16 program, further my education and look into an apprenticeship

17 program, to be into a routine and hopefully add to the

18 abilities I already possess.  Hopefully it will make my

19 transition into life and employment after incarceration

20 easier.  I have done as much research in the individual

21 prisons that I was able to with the resources available in the

22 county jail.  To be able to participate in UNICOR, RDAP,

23 college courses and possible apprenticeship programs, the only

24 available prisons in my possible classification levels -- in

25 my possible classification levels I can find in our region are

20

1    Forrest City, Arkansas, and Sandstone, Minnesota.

2            My mother currently resides in Arkansas.  She's

3    getting advanced in age and having more issues with her health

4    all the time.  Due to the fact I would like -- due to that

5    fact, I would like to ask if Your Honor would make a

6    recommendation to the Forrest City facility because she would

7    be able to visit me due to my close proximity to her.  If that

8    is not available, I would like to try to go to Sandstone,

9    Minnesota, because I want to make my time of incarceration as

10   productive as possible and it seems that those facilities

11   offer me the best opportunity for that.

12           I also am getting advanced in age and never want to

13   be in this or any similar situation again.  I have made some

14   bad decisions and mistakes and I understand there are

15   consequences for my involvement in this crime.  I take full

16   responsibility for that.  As I said before, I just want to

17   continue learning and growing throughout this experience and

18   try to turn my mistakes and downfalls into life lessons and

19   possibly even some blessings for myself and my loved ones'

20   futures.

21           Thank you.

22           THE COURT:  Any reason why this Court shouldn't

23   impose sentence at this time?

24           MR. EGGERT:  No, Your Honor.

25           MR. REYNOLDS:  No, Your Honor.

Case 6:14-cr-03106-MDH   Document 1057   Filed 10/04/17   Page 21 of 28

```
 1              THE COURT:  It's now my responsibility, Mr. Floyd,
 2    to explain to you my thinking.  Let me start with the premise
 3    that it is reflective of the curse of methamphetamines on our
 4    communities that the Congress has said someone who's committed
 5    your crime can be sentenced to as much as life in prison.
 6    While you may have had an epiphany in your last two years in
 7    jail about the impact methamphetamines have on people's lives,
 8    the rest of us knew it.  We saw it.  And a majority of the
 9    people elected congressmen to try to do something about it.
10              Methamphetamines destroys lives and destroys
11    families and you were a mid-level player in the largest
12    methamphetamine conspiracy in southwest Missouri that I have
13    witnessed and a lot of people's lives were damaged because of
14    that conspiracy.  What I always find odd in cases like this is
15    the people damaged by it were people just like you.
16              First of all, there were 29 defendants.  Every one
17    of their lives has been damaged.  But then there's all the
18    people you sold to, who if they became addicted to
19    methamphetamine are not able to kick it are then now looking
20    for a different source of supply.  And then in order to pay
21    their own methamphetamines, they're tempted to sell it
22    themselves and then will be in a conspiracy in front me in the
23    years ahead.  It's a nasty drug and it does damage to families
24    and people and you chose that route and that's worthy of
25    punishment.
```

Case 6:14-cr-03106-MDH   Document 1057   Filed 10/04/17   Page 22 of 28

1      I don't doubt that your own use had something to do
2 with it.  You don't always use good judgment in that
3 circumstance, but such is the situation.  I also want to send
4 a strong message to whoever out there has methamphetamine
5 problems that they need to get treatment now before they too
6 become a salesperson in part of a conspiracy and end up facing
7 the long jail sentences our congressmen have enacted.

8      This conspiracy had drugs and guns like virtually
9 all of them do.  Now, you were not one who had the gun.
10 That's positive for you.  But it also -- need to understand
11 that you placed yourself and your community at risk and your
12 family because violent people sometimes are part of these
13 conspiracies and I believe there was at least one gun incident
14 involving Mr. Allen, is my recollection.  So these people were
15 not above violence.  I think, actually, Mr. Allen was
16 defending the drug store from people trying to steal it, is my
17 recollection.

18      Your criminal history is not as significant as some
19 that we see -- you're a category two -- but even the criminal
20 history you have isn't as bad as some that we have in this
21 conspiracy.  But you run with people like that and you
22 associate with them and you're more likely to get dragged down
23 than you are to pull them up and you got dragged down with
24 them in this case.  But I do know that your criminal history
25 is not quite as bad as some others.

Case 6:14-cr-03106-MDH   Document 1057   Filed 10/04/17   Page 23 of 28

I don't want to spend too much time analyzing each

person that I've sentenced.  Believe me, I've given long

thought about every one of them and I give a lot of thought

about trying to be fair one to another.  When you got 29

defendants, everybody's a little different.  Mr. Massoni was

the money man but he didn't sell the drugs.  Mr. Jones had

weapons but he didn't really sell the drugs.  He mainly

defended his sister and the drug store.  Another of the couple

people that I've sentenced were primarily people who ran drug

houses for them, although one of them, I think it was

Paluczak, kind of fell in and made some sales, too, but not as

often as some others.  And I started my sentencing below what

the U.S. Attorney recommended.  Maybe Mr. Jones was the first

one I did.  I'm not sure.  But I did think the guidelines were

incredibly, incredibly high.  So I try to fit you in where you

belong.

          You do not have a cooperation agreement.  Let the

record be clear, you're not a cooperator.  That doesn't mean

you told nothing but lies but certainly don't see that you

were a cooperator and don't -- sure exactly why, but in prison

you may be glad you weren't because I know that's a stigma

that people carry with them when they get there.

          But if I analyze everyone and try to slot them where

they are, I don't disagree with the government that you belong

somewhere above Mr. Hatch and below Mr. Jones and Gardner.  So

                                24

the question is where do I put you?  I've given it some
thought, considered what your attorney had to say, and knowing
I have yet several more people to sentence here, here's what
I'm going to do.

Pursuant to the Sentencing Reform Act of 1984, it's
the judgment of this Court that defendant David Floyd is
hereby committed to the custody of the Bureau of Prisons for
162 months on Count 1 of the second superseding indictment.
I'm going to place you on supervised release after release
from imprisonment for five years.  I do not think you have the
ability to pay a fine so I'm going to waive any imposition of
fine.  You do have to pay a $100 special assessment.

While you're on supervised release you will comply
with the mandatory and standard conditions that have been
adopted by the Court.  In addition, you will comply with the
special conditions listed in Part D, Paragraph 118 A to E of
the presentence investigation report.

I'll point out to you that when you're released from
prison, if you don't comply with the rules that I have just
established -- and they'll be given to you in writing -- that
you can go back to prison just for violating those rules even
if they're not a crime.  Please follow those rules exactly and
be honest with your probation officer.

I'm going to recommend that you be designated to an
institution for participation in the 500-hour residential

1  substance abuse treatment program and also the UNICOR program.

2  I will also recommend that to the extent your needs as an

3  inmate can be met, that the Bureau of Prisons consider placing

4  you in Forrest City, Arkansas, as a top priority and to the

5  Minnesota institution you're recommending if Forrest City is

6  not a suitable alternative.

7          You have a right to appeal my sentence.  If you want

8  to appeal, you need to do so within 14 days.  If you don't

9  appeal within 14 days, you risk losing the right to raise

10 certain issues.  Do you understand your right of appeal?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  I think the government has counts to

13 dismiss.

14         MR. EGGERT:  Yes, Your Honor.  At this time the

15 government would orally move to dismiss Count 26 of the second

16 superseding indictment.  And, again, for the record, while I

17 don't believe this defendant was charged in the original or

18 first superseding indictment, just to make clear, any other

19 indictments that the defendant is charged in should be

20 dismissed as well.

21         THE COURT:  Count 26 of the second superseding

22 indictment will be dismissed and to the extent there is any

23 other pending indictment in this court against this defendant,

24 those counts will be dismissed.

25         Anything further?

26

1          MR. EGGERT:  No, Your Honor.  Thank you.

2          THE COURT:  Anything further, Mr. Reynolds?

3          MR. REYNOLDS:  No, Your Honor.

4          THE COURT:  All right.  We'll be in recess.

5          (Court stands in recess at 1:52 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              CERTIFICATE OF OFFICIAL REPORTER
 2        I, Jeannine M. Rankin, Federal Official Court Reporter,
 3   in and for the United States District Court for the Western
 4   District of Missouri, Southern Division, do hereby certify
 5   that the foregoing is a true and correct transcript of the
 6   stenographically reported proceedings.
 7
 8
 9
10
11                    /s/ Jeannine M. Rankin
12   Date:     10/03/17     Jeannine M. Rankin, CCR, CSR, RPR
13
14
15
16
17
18
19
20
21
22
23
24
25
```